## BLAKE *versus* JUNKINS.

In a bastardy process, in order to entitle the complainant to be a witness for herself, it must be proved by other evidence that, *at the time of her travail*, she accused the respondent as the father of the child.

Such an accusation is too late, if not made until the child has been expelled from the body of the mother, though made before the connecting cord is severed and before the child has breathed.

ON REPORT from *Nisi Prius*, WELLS, J., presiding.

BASTARDY PROCESS. The complainant had, in due form, charged the respondent as the father of her child.

At the trial, in order to show, that she was competent to be a witness, another witness was introduced, who testified,

that she was with the complainant during all the time of her travail, that nothing was said of the paternity of the child, until it had been expelled from the body of the mother; that after it was expelled, and before the cord connecting it with the mother had been severed, and, as the witness thinks, before the child had breathed, some person said " now they will say the child is not Junkins'." To which the complainant immediately replied, — "I take God to be my witness, it is his and no one's else."

The Judge considered that the accusation was not "made at the time of the travail," and excluded the complainant as a witness.

If that exclusion was proper, a nonsuit is to be entered.

*Tapley,* for the complainant.

*Eastman & Leland,* for the respondent.

APPLETON, J. — The right on the part of a complainant in a bastardy process to testify in her own cause is derived entirely from R. S. c. 131, and unless a compliance with its provisions is clearly shown, she cannot be a witness. The eighth section among other things provides that if " at the time of her travail" she shall "accuse the same man with being the father of the child, of which she is about to be delivered," &c. "she shall be a witness in the trial of the cause, unless she would be an incompetent witness in the trial of any other cause, by reason of conviction of some crime." In this case after the child had been expelled from the womb of the mother but before the connection between them had been severed, certain inquiries were made of and answers given by the mother in relation to the paternity of the child. The answers then given were offered in evidence and were excluded. The accusation of the putative father must be made by the mother at the time of her travail with the child " of which she is about to be delivered." Now were the answers given when the mother was about to be delivered of her child? In ordinary language or in the most strictly scientific use of terms, could the mother be said to be about to be delivered of a child, after that child had left the womb?

The word delivery was used in its ordinary and accustomed acceptation. The best writers on medical jurisprudence as well as the decisions of our Courts concur in this, that after the child has passed from the body of the mother a delivery of the child has taken place. The language of the R. S. is similar to that of the bastardy Act of 1821 and the judicial construction given the latter must be considered as affirmed by the legislative reënactment of its provisions. *Dennett* v. *Kneeland,* 6 Green. 460; *Bacon* v. *Harrington,* 5 Pick. 63. The cases are decisive of the question raised in this cause. The testimony offered was rightly excluded.

*Nonsuit ordered.*

Shepley, C. J., and Tenney, Wells and Howard, J. J., concurred.